[No. 26310. Department Two. December 23, 1936.]

ADOLPH LAUBER *et al., Respondents,* v. H. Y. LYON, *Appellant.*[1]

[1]Reported in 63 P. (2d) 389.

*Hall & Schaefer,* for appellant.

*Huntington, Wilson & Davis, Wilkinson & Carson,* and *J. Guthrie Langsdorf,* for respondents.

MILLARD, C. J.—Plaintiffs, a marital community, instituted this action to recover for damage to their automobile and for personal injuries sustained by them as a result of the collision of their automobile with defendant's automobile. Plaintiffs alleged, in addition to allegations of other negligence, as the proximate cause of the accident, the careless and negligent operation by defendant of his automobile on the left or wrong side of the highway and defendant's failure to

". . . give one half of said highway to the automobile which plaintiffs were operating and which was proceeding in the opposite direction from defendant's automobile."

Defendant answered, denying the allegations of negligence and of damage, and pleaded as an affirmative defense that the accident was unavoidable on the part of the defendant, due to some mechanical defect in his automobile that was latent and not discoverable by reasonable inspection, and of which he was not previously aware.

The trial of the cause to a jury resulted in a verdict in favor of the plaintiffs. From the judgment entered on the verdict, motions for judgment notwithstanding the verdict and for a new trial having been overruled, the defendant appeals.

The verdict reflects the jury's acceptance as true the evidence which is summarized as follows:

On August 26, 1934, Adolph Lauber, accompanied by his wife and two small children, was proceeding in his Chevrolet sedan in a northerly direction on the Pacific highway about one mile north of Centralia, Washington. Appellant was proceeding south on said high-

way in his sedan. The accident occurred at seven a. m. The weather was clear and the pavement was dry. The concrete pavement, twenty feet in width, was straight for approximately one half mile north and south of this point. No streets or roads intersected the highway near the scene of the accident. Both automobiles were in full view of the operator of each for a considerable distance prior to the collision. Both automobiles were traveling at the rate of from 35 to 40 miles an hour. Marked on the highway was the usual yellow stripe indicating the center of the road.

Respondents first noticed appellant's automobile when the latter was 125 to 150 feet north of respondent's automobile. The appellant's automobile was then moving diagonally toward the left side of the highway and was partially across the center line of the highway towards the automobile of respondents. The respondents' automobile was steered to the right in an endeavor to avoid a collision with appellant's car, which continued toward the left or east side of the highway. The left front wheel of appellant's automobile struck the left rear wheel of respondents' automobile. When the two automobiles collided, appellant's automobile was not less than three or four feet east of the center line of the highway. The collision was 40 or 50 feet north of a bridge or culvert, 80 feet long. After the collision, appellant's automobile proceeded down the highway, hit the bridge about the center thereof and skidded on past the south end of the bridge for a distance of approximately 130 feet from the point of collision.

Read as a whole, the testimony of appellant corroborates the testimony of the respondents. While appellant testified that his car commenced to veer to the left when it was probably 125 feet north of respondents' automobile, he later testified that the distance from the

respondents' automobile when his automobile commenced to veer to the left was 30 to 40 feet. He explained that, at the time his automobile began to veer to the left, he felt a "sort of jerk in the steering wheel," and, "I seemed to be unable to get it back to the right at all." He did not apply his brakes, but confined his efforts to an endeavor to steer his automobile to the right side of the highway. In this he was unsuccessful, his automobile continuing to proceed to the left, with the result as narrated above.

The evidence respecting the alleged latent defect upon which appellant relies as an affirmative defense shows hardly more than an inference from an inference. Appellant testified that his automobile, which had been operated about 40,000 miles prior to the accident, was regularly inspected, oiled and greased. He did not have knowledge of any defect at the time of the accident or at any other time that remained unrepaired. His automobile was in an accident in January, 1934, when it was struck on the right side. The frame of the car was bent and one of the doors was smashed. Immediately following the accident, the appellant's automobile was repaired.

There is no testimony other than the foregoing concerning the extent of the damage to the appellant's automobile in the accident of January, 1934.

The mechanic who repaired the car following the collision out of which this action arose was called as a witness by appellant. He testified that he straightened the frame and the axle, repaired the steering system and straightened the left side of the hood and fender. The Pitman shaft was broken, and the king pin, which he replaced, was broken into either two or three pieces. The king pin is a knuckle joint on the spindle, which holds the spindle to the axle. This king pin was on the "left front wheel." The king pin is concealed inside

of part of the steering apparatus, and the mechanic did not discover it was broken until he removed the spindle to straighten the axle. The king pin is the steering knuckle pin on the axle, and the steering apparatus pivots on the pin. If the king pin is broken, it might make a bind, which would cause the car to be hard to steer. This mechanic further testified that he could not say whether the appellant's automobile could have been thrown into the direction described by appellant by a break in the king pin. The king pin might have been broken, he stated, in the collision of appellant's and respondents' automobiles. There is no other testimony as to the manner in which the king pin was broken.

Another mechanic called by appellant testified that he was familiar with automobiles like the one owned and operated by the appellant. He explained the function of the king pin, and testified that the king pin in appellant's car, if it had been in an accident about a year or so previously and received such a severe blow on the right side that it bent the frame, "It could be fractured and travel for a period of time without coming loose and without being discovered."

This second mechanic, who had not seen the king pin and did not know where it was broken, testified that, if the king pin was broken in particular places, it would be impossible to turn the automobile.

"If this should be broken, the tendency would be for that wheel to come out of the arm, and that would throw this wheel down so it would touch on the axle, and by pulling on the wheel you could not possibly move it. Not only that, but it exerts a bind in here . . . which would be impossible for one to overcome with the steering wheel. You can see why one could not turn that wheel."

Counsel for appellant contend that the burden was not imposed upon the appellant to establish by a

preponderance of the evidence that appellant's automobile was defective, that the defect was latent and not discoverable by a reasonable inspection, and that the automobile was, therefore, unavoidably on the wrong side of the road.

It is not, nor could it be successfully, contended that the collision between appellant's automobile and respondents' automobile was caused other than by the entry of appellant's automobile and continuance on its wrong side of the highway until the two automobiles collided. Appellant's automobile was on the wrong side of the highway at the time of the collision and thus caused the collision. It follows that the burden was upon the appellant to justify or excuse the presence of his car at that point.

Counsel for appellant also complain of instruction No. 12, in which the jury were charged that, if they found from the evidence that the respondents were proceeding along their right hand side of the highway immediately before the accident, and that the accident was proximately caused by the sudden turning by the appellant to his left and in front of the car of the respondents at so close a distance that the respondents could not, in the exercise of ordinary care, avoid striking appellant's car, then the verdict should be for the respondents.

We have consistently held that, where an automobile collides with another automobile which is upon its own side of the road, the burden is upon the operator of the automobile upon the left or wrong side of the road to explain how it happened without his negligence. *Crowe v. O'Rourke,* 146 Wash. 74, 262 Pac. 136; *Thomas v. Adams,* 174 Wash. 118, 24 P. (2d) 432.

Whether there was a latent defect (a broken king pin) in appellant's automobile or whether the king pin in his automobile broke as a result of the col-

lision of his automobile with the respondents' automobile, or whether it broke when his automobile hit the concrete bridge or during the slide to the bridge or while his automobile slid across the bridge or was driven across the bridge, presented an issue of fact which was submitted to the jury. The only issue of fact in this case was, as stated above: Was there a latent defect in appellant's automobile by reason of which the accident was unavoidable? On conflicting evidence, that question was one of fact for the jury, and its verdict foreclosed the question in favor of the respondents.

Instruction No. 12, of which appellant complains, should be read together with the other instructions. However, read alone, it was not an erroneous instruction. The sole question was as to any excuse or justification for the position occupied by appellant's car when the accident occurred. If an automobile driven along the highway suddenly turns over onto the wrong side of the highway into the path of an oncoming vehicle at so close a distance that the other vehicle cannot, by the exercise of ordinary care on the part of its operator, avoid striking the automobile, then in the absence of some satisfactory explanation on the part of the driver so turning over into the path of the other car to show that his act was unavoidable, the plaintiff in such a case is entitled to recover. We so held in *Thomas v. Adams,* 174 Wash. 118, 24 P. (2d) 432, the pertinent portion of which opinion reads as follows:

"Appellants assign error upon the giving of the following instruction:

" 'You are instructed that if you find from a fair preponderance of the evidence in this case that plaintiffs were travelling at a lawful rate of speed and on their right side of the paved portion of the highway when the automobile in which they were riding was

struck by the Cadillac automobile driven by the defendant, John O'Donnell, that the burden is upon said defendant, if he would be excused of negligence by reason of his getting on the wrong side of the highway, to prove to your satisfaction that he got on the wrong side of the highway and remained thereon until the collision occurred through no negligence of his own.'

"The chief objection urged to this instruction, and the only one not disposed of by what has already been said, seems to be based upon the words, 'remained thereon,' so that thereby the duty and burden was placed upon the appellants of excusing or justifying not only the entry of their car upon the wrong side of the highway, but also that it remained there until the collision.

"The only time when the occupancy of the wrong side of the highway becomes important in a case such as this is when it interferes with, or imperils, those who are rightfully there. The question here was as to any excuse or justification for the position occupied by appellants' car when the accident took place. Entering upon and remaining on the wrong side of the highway was here one and only one question, namely: was appellants' car where it was because of the negligence of the driver, or was it there because in the exercise of due care he could not prevent its being there? The instruction, to us, seems so clearly right that we refrain from further discussion.''

Our examination of the record fails to disclose reversible error. It follows that the judgment should be, and it is, affirmed.

TOLMAN, HOLCOMB, MITCHELL, and BEALS, JJ., concur.